**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,
ex rel. and 84PARTNERS LLC,
Relator,

    Plaintiffs,

v.                                                                                  Case No. 3:14-cv-1256-TJC-PDB

HUNTINGTON INGALLS
INDUSTRIES, NEWPORT NEWS
SHIPBUILDING DIVISION and
GENERAL DYNAMICS ELECTRIC
BOAT,

    Defendants.

_____

**O R D E R**

This False Claims Act (FCA), 31 U.S.C. § 3729 et seq., qui tam case is before the Court on its second round of motions to dismiss. Defendant General Dynamics Electric Boat Corp. (EB) and Defendant Newport News Shipbuilding, a division of Huntington Ingalls Industries (NNS) (collectively, Defendants) each moved to dismiss Plaintiff 84Partners LLC's Second Amended Complaint (SAC). (Docs. 102, 105, 106). Plaintiff responded in opposition (Docs. 109, 110), and Defendants replied (Docs. 114, 115).

## I. BACKGROUND

### A. Alleged Facts

Defendants are in the business of manufacturing and delivering nuclear submarines. (Doc. 102 at ¶ 4). This case arises out of the delivery of non-conforming pipe fittings to the United States Navy that Defendants procured from their subcontractors Nuflo, Inc. and Synergy Flow Systems, LLC (SFS). Id. ¶ 2. Relator 84Partners is a Delaware corporation, and its members Mickey Skobic and Joanne Skobic (residents of Florida) previously worked at Nuflo. Id. ¶¶ 19–20. From 2005 to 2014, Mickey Skobic worked as a welder and an inspector, and from 2008 to 2015, Joanne Skobic held various positions, including pipe cleaning and lubrication and inspection positions. Id. ¶ 20. In addition, Peter Schilke of 84Partners (now deceased) was an engineer for thirty-five years at EB. Id. ¶ 26. Mr. Schilke provided technical support and program management to EB and had extensive experience with EB's nuclear naval program. Id.

During all relevant times, EB has served as a prime contractor[1] on several multi-year contracts with the Navy to provide thirty-eight nuclear submarines and NNS has served as EB's first-tier subcontractor. Id. ¶¶ 29, 31.

---

[1] A prime contractor is a "contract or contractual action entered into by the Federal Government to obtain supplies, materials, equipment, or services of any kind." (Doc. 102 at 14 n.3).

2

EB and NNS worked together under a teaming agreement,[2] and hired Nuflo and SFS as subcontractors for submarine pipe fittings. Id. ¶¶ 39, 48–49. Nuflo manufactured, supplied, and distributed piping components for military vessels and SFS operated as a distributor of Nuflo products but had no manufacturing capabilities of its own. Id. ¶¶ 48–49. SFS was fifty percent owned by Nuflo's owners. Id. ¶ 49.

Given the great safety risk posed by poorly manufactured piping systems in submarines, the contract between the Navy and EB required EB (and NNS under the teaming agreement) to implement specific quality assurance, manufacturing, and inspection procedures. Id. ¶¶ 52–54, 61. Under the contract's terms and the teaming agreement, Defendants were also required to exert control over the processes of their subcontractors to ensure that their products and services conformed to the Navy's stringent requirements. Id. ¶¶ 80–82. Defendants utilized Supplier Delegated Inspection Programs (SDIP) to implement these requirements. Id. ¶ 109. Under the SDIP, Defendants "admit certain suppliers to the program and then delegate authority to individuals at those suppliers to act as agents of the contractors to conduct source inspections on the contractors' behalf." Id. Both Nuflo and SFS

---

[2] According to the SAC, "teaming agreements" arise "when a potential prime contractor agrees with one or more other companies to have them act as its subcontractor under a specified Government contract . . . ." (Doc. 102 at 14 n.3).

were accepted into EB's SDIP, but Nuflo was briefly suspended from the program in 2007 during which SFS SDIP inspectors inspected Nuflo's work. Id. ¶¶ 147, 155–57.

Nuflo and SFS produced and delivered a substantial quantity of non-conforming pipe fittings to Defendants. Id. ¶¶ 151, 187–88. Several defective products were flagged by Defendants and the defects were corrected, while others went unnoticed and were installed on Navy submarines. Id. at 78–79, ¶ 403. 84Partners alleges that because of Defendants' insufficient oversight, Defendants provided non-conforming parts and services to the Navy along with false statements and false claims for payment. Id. ¶¶ 8–11.

### B. Procedural History

84Partners filed this FCA suit against Nuflo, EB, and NNS under seal on November 10, 2014, and on August 1, 2019, the Court unsealed the Complaint. (Docs. 3, 38). The Court subsequently dismissed the claims against Nuflo to effectuate Nuflo's settlement agreement with the United States (Docs. 50, 51, 53), and 84Partners submitted its First Amended Complaint (FAC) (Doc. 52). Defendants moved to dismiss the FAC (Docs. 60, 61), and although the United States has elected not to intervene against Defendants (Doc. 37), the United States responded (Doc. 72). The Court held a hearing on the motions, the record of which is incorporated by reference, and dismissed 84Partners' complaint without prejudice finding that the FAC was an insufficient shotgun pleading.

4

(Doc. 94 at 61:6–64:6). 84Partners then filed its SAC (Doc. 102), which the Court permitted it to initially file under seal (Doc. 101), but then unsealed a month later finding that "no information [in the] Second Amended Complaint has been identified as confidential, proprietary, or otherwise subject to protection from public filing" (Doc. 104 at 1). The SAC alleges that EB (Counts I, II) and NNS (Counts III, IV) both violated 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B).[3] (Doc. 102 at 126, 132, 135, 142).

## II. MOTION TO DISMISS

### A. The False Claims Act

The FCA is a quasi-criminal statute that imposes liability on any defendant who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]" 31 U.S.C. § 3729(a)(1)(A)–(B); see U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360 (11th Cir. 2006). Defendants assert that 84Partners' SAC is insufficient under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Docs. 105

---

[3] EB has also filed a separate suit against the Skobics individually. EB maintains that its claims in the Skobic suit are compulsory counterclaims in this 84Partners suit, but that it filed the Skobic suit "out of an abundance of caution given its inability to reach a tolling agreement" with the Skobics. (Doc. 8 at 1, General Dynamics Electric Boat Corp. v. Mickey Skobic, Joanne Skobic, 3:20-cv-769-TJC-MCR (M.D. Fla.)). In the Skobic suit, EB filed a motion to stay pending the outcome of the Court's decision here, but the Court denied the motion to stay. (Doc. 32, Electric Boat, 3:20-cv-769).

5

at 1; 106 at 8). Rule 12(b)(6) only requires that the SAC contain "enough facts to state a claim to relief" under the FCA "that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Rule 9(b), on the other hand, requires that 84Partners "state with particularity the circumstances constituting fraud" but "knowledge . . . may be alleged generally." See U.S. ex rel. Clausen v. Lab'y Corp. of Am., 290 F.3d 1301, 1303, 1308–09 (11th Cir. 2002). 84Partners raises both presentment and false statement claims under the FCA.

In 2009, the Fraud Enforcement and Recovery Act (FERA), Pub. L. No. 111-21, 123 Stat. 1617, amended the FCA, re-designating both the presentment and false statement sections. See Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1327, 1327–29 nn.3–4 (11th Cir. 2009). The Eleventh Circuit has ruled that the amended provisions of the statute do not apply retroactively to any claims made before June 7, 2008. See id. Here, there are no specifically alleged dates as to when claims were submitted, but the relevant period clearly begins by September 2006 when the first "red flag" occurs, so both versions could conceivably apply. (Doc. 102 at 147). However, for the purposes of this case, the pre-FERA and post-FERA claim presentment provisions are not materially different. Compare 31 U.S.C. § 3729(a)(1) (1994) (imposing liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of

6

the United States a false or fraudulent claim for payment or approval") with United States ex rel. Phalp v. Lincare Holdings, Inc., 857 F.3d 1148, 1154 (11th Cir. 2017) ("To establish a cause of action under § 3729(a)(1)(A), a relator must prove three elements: (1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false."). For the false statement claims, the Court would, if presented with specific dates, apply 31 U.S.C. § 3729(a)(2) (1994)—the pre-FERA false statement provision—to any claims for payment pending before June 7, 2008 and § 3729 (a)(1)(B) to any claims for payment pending on or after that date.

### B. Presentment Claims

For its FCA presentment claims, 84Partners must plead with particularity that Defendants knowingly presented a false claim for payment to the Navy. See 31 U.S.C. § 3729(a)(1)(A). "The submission of a claim is . . . the sine qua non of a False Claims Act violation;" thus, "if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government." Clausen, 290 F.3d at 1311. The Eleventh Circuit has generally recognized two ways to show the existence of a false claim: (1) particular allegations of the "'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government"— usually in the form of billing invoices, Corsello v. Lincare, Inc.,

7

428 F.3d 1008, 1014 (11th Cir. 2005), or (2) particular allegations showing that the relator "personally was in a position to know that actual false claims were submitted to the government and had a factual basis for his alleged personal knowledge," United States ex rel. Mastej v. Health Mgmt. Assocs., Inc., 591 F. App'x 693, 707 (11th Cir. 2014) (citing United States ex rel. Walker v. R&F Properties of Lake Cty., Inc., 433 F.3d 1349, 1360 (11th Cir. 2005)).

1. 84Partners fails to plead with particularity the details of the false claims.

84Partners fails to plead with particularity the existence of a false claim. 84Partners alleges that Defendants submitted false claims to the Navy when Defendants knowingly delivered products to the Navy that did not satisfy the Navy's strict quality assurance requirements. (Doc. 102 ¶ 10). 84Partners concedes that the products were largely defective due to Nuflo and SFS's actions but argues that Defendants' lack of oversight violated EB's contract with the Navy and resulted in Defendants' presentment of false claims to the Navy. Id. ¶¶ 2, 7–8.

Even assuming arguendo that the Nuflo products were defective, that Defendants' oversight processes were in violation of EB's contract, and that Defendants knew of these facts, it is entirely unclear what happened between the time Nuflo delivered the products to Defendants and when the products

were installed on the submarines.[4] 84Partners alleges no specific billing invoices, billing dates,[5] records of billing, or even which Defendant submitted the bills to the government. Instead, 84Partners argues that because Nuflo delivered some defective products to Defendants, and some defective products were placed on Navy submarines, the Court should infer that Defendants, as the intermediaries, knowingly submitted false claims. (Docs. 102 ¶¶ 2, 451; 110 at 6–7). In support, 84Partners provides a general overview of Defendants' and the Navy's billing processes, then alleges that EB's invoices to the Navy could not have financially accounted for the defective Nuflo products. (Doc. 102 ¶¶ 426–31, 439–41). These allegations, however, are broad and conclusory and only provide that the "Navy is unaware of any point" where "purchase orders were suspended or determined unallowable" and that "EB has not told the Navy that it withheld any Nuflo-related costs from invoices submitted to the Navy for payment." Id. ¶¶ 429–30. Thus, 84Partners alleges, "[b]ased on these facts, the Navy concludes EB invoiced and was paid by the Navy for the costs associated with Nuflo-made material under purchase orders issued by EB or its

---

[4] It is not even clear if Nuflo delivered the products to NNS before NNS delivered the products to EB, or if certain products went to EB and others to NNS, or if there was some other delivery arrangement.

[5] Without dates associated with the alleged claims, the Court cannot know which—the pre- or post-FERA—provisions to apply to which claim.

9

subcontractor NNS." Id. ¶ 431. The Court declines to make the inferential jump that 84Partners desires based on these conclusory allegations.

The Eleventh Circuit has often disfavored district courts inferring the submission of false claims. See Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Georgia, LLC, 853 F. App'x 496, 502–03 (11th Cir. 2021) (affirming dismissal for failure to plead submission of a false claim when allegations were based only on a statistical likelihood that claims were submitted); Clausen, 290 F.3d at 1313. In Clausen, the seminal FCA case in the Eleventh Circuit, the plaintiff brought a qui tam suit against the defendant, an independent medical testing service company and a direct competitor of the plaintiff, for defrauding the government. Clausen, 290 F.3d at 1302–03. The defendant performed medical tests for long term care facilities whose residents were often covered by government-supported insurance programs. Id. at 1302. The plaintiff alleged that the defendant often "performed unauthorized, unnecessary or excessive medical tests" on the facilities' residents who were insured by these government-supported programs, thereby submitting false claims for payment to the government. Id. at 1303. The plaintiff, while providing many details regarding the defendant's over-testing scheme, did not identify specific information showing a false claim had been submitted. Id. at 1311–12. The plaintiff only alleged that the bills were submitted on the date of the service or soon thereafter. Id. at 1313. The Eleventh Circuit held that

10

dismissal of all the plaintiff's FCA claims was proper because, while the plaintiff succeeded in detailing the defendant's improper internal policies, "[t]he [FCA] does not create liability merely for a [defendant's] disregard of Government regulations or improper internal policies unless, as a result of such act, the [defendant] knowingly asks the Government to pay amounts it does not owe." Id. at 1311–12, 1315. The court held that the plaintiff's claims failed because he failed to allege that the defendant's scheme came to fruition; there were no amounts of charges identified, no dates alleged, and no policies about billing or second-hand billing information (with the exception of a general description of the form and test codes used). Id. at 1311–13. The court concluded that "we cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of a lawsuit." Id. at 1313.

Similar to Clausen, 84Partners has alleged an improper scheme in detail, but has failed to allege that the scheme came to fruition. 84Partners has failed to provide any copies of bills or allege any specific overcharges, dates, or policies regarding billing. 84Partners provides a broad overview of Defendants' billing processes, but points to no specific charge, date, or invoice that contained a false claim. (Doc. 102 ¶¶ 420–31, 439–41). 84Partners tries to differentiate this case from Clausen by arguing that false claims can be inferred because the defective products were installed on Navy submarines (Doc. 109 at 8–9), but these allegations are not enough because they, at most, show improper internal

11

practices. Under Clausen, allegations of improper internal procedures alone are insufficient to allege an FCA claim. See Clausen, 290 F.3d at 1311–12.

### 2. 84Partners fails to plead with particularity that its members were in a position to know that false claims were submitted.

In addition to lacking specific details regarding the alleged false claims, 84Partners' allegations lack first-hand knowledge of Defendants' billing processes. "[R]elator[s] can [] provide the required indicia of reliability by showing that [they] personally [were] in a position to know that actual false claims were submitted to the government and had a factual basis for [their] alleged personal knowledge." Mastej, 591 F. App'x at 707. For example, relators who have become familiar with a defendant's billing, accounting, or certification practices through their roles and duties may sufficiently articulate that a defendant submitted false claims to the government based on their firsthand knowledge. See, e.g., id. at 707–08 (finding that the relator had sufficient personal knowledge where, "[a]s Vice President [of the defendant's company], [the relator] had direct information about [the defendant's] billings, revenues and payor mix, and he was in the very meetings where Medicare patients and the submission of claims to Medicare were discussed").

84Partners suggests that its members Mickey Skobic, Joanne Skobic, and Peter Schilke possess personal knowledge to support that Defendants submitted false claims, (Docs. 102 ¶¶ 21, 26–27; 109 at 7; 110 at 7–8), but the

SAC does not support such a conclusion. Mickey Skobic and Joanne Skobic collectively performed manufacturing, inspection, and shipping tasks at Nuflo (which settled with the United States), but never performed roles that would provide them with an understanding of Defendants' claims processes (e.g., billing practices), certification processes, or financial/accounting history. (Doc. 102 ¶¶ 20–24). The SAC does not even allege that the Skobics overhead any information about these processes. Furthermore, although the late Mr. Schilke was an engineer at EB for twenty-five years, the SAC alleges only that he "was present for meetings and conversations, and in receipt of documents, which confirmed that non-conforming fittings were accepted by EB and NNS from Nuflo and SFS and were either awaiting installations or were already installed in submarines." Id. ¶¶ 26–27. This is insufficient; no allegations lead to the conclusion that Mr. Schilke had personal knowledge of false claims being submitted to the Navy. 84Partners has failed to plead the existence and submission of a false claim; thus, its presentment claim fails.

### C. False Statement Claims

Under the pre-FERA § 3729(a)(2), "a plaintiff must show that (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim, either to the defendant itself, or to a third party." Hopper, 588 F.3d at 1327.

13

While § 3729(a)(2) does not require 84Partners to prove that Defendants presented or caused to be presented a false claim to the government, 84Partners must nonetheless show that a false claim exists. Id. at 1328. Subsection 3729(a)(2) does not "'impose liability for false statements [unless they] actually cause the government to pay amounts it does not owe.'" Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1052 (11th Cir. 2015) (quoting Hopper, 588 F.3d at 1328) (alterations in original). In other words, "[i]mproper practices standing alone are insufficient to state a claim under either § 3729(a)(1) or (a)(2) absent allegations that a specific fraudulent claim was in fact submitted to the government." Hopper, 588 F.3d at 1328 ("Subsection (a)(2) is not . . . a separate 'attempt' provision of the False Claims Act."); see also Urquilla-Diaz, 780 F.3d at 1052.

In comparison, "[t]o prove a claim under § 3729(a)(1)(B) [FERA], a relator must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." Phalp, 857 F.3d at 1154. While government payment is not an element that relators must establish under § 3729(a)(1)(B), see United States ex rel. Schultz v. Naples Heart Rhythm Specialists, P.A., No. 2:17-CV-237-FTM-29MRM, 2020 WL 2473456, at *5 (M.D. Fla. May 13, 2020), relators must still plead that the false statement was connected to an actual false claim, see Phalp, 857 F.3d at 1154 ("[T]he statement was material to a false claim."

14

(emphasis added)). For the same reasons stated when discussing 84Partners' presentment claim, 84Partners has failed to plead with particularity the existence of a claim, false or otherwise; therefore, 84Partners has failed to state a claim under both the pre-FERA § 3729(a)(2) and § 3729(a)(1)(B).[6]

While 84Partners has sufficiently pled that Nuflo workers delivered Defendants defective parts and that defective parts were installed on Navy submarines,[7] these allegations are not enough for an FCA claim against these Defendants without further evidence of Defendants' claims processes.

---

[6] Defendants also argue that 84Partners has failed to sufficiently plead that any alleged claims were false, and that Defendants knowingly submitted the alleged false claims. Defendants argue that any alleged claims were not false because EB never (expressly or impliedly) certified compliance with its contract with the Navy, the parts were not necessarily non-conforming, and any alleged violations of the quality assurance provisions in EB's contract could not constitute an objective falsehood. (Docs. 105, 106). These issues are necessarily fact specific, and while the Court's decision is not based on these points, the Court notes that the Eleventh Circuit has historically resisted finding that a violation of a standard that requires an opinion or judgment call rises to the level of falsehood required for FCA claims. See United States v. AseraCare, Inc., 938 F.3d 1278, 1297–1300 (11th Cir. 2019) (collecting cases). Defendants also argue that 84Partners failed to plead that Defendants had knowledge of the alleged false claims. 84Partners primarily argues that the knowledge of Nuflo should be imputed to EB and NNS through an agency theory. 84Partners fails to show any case that has adopted this theory in the context of an FCA claim.

Having found that 84Partners failed to plead the existence and submission of false claims with particularity, the Court need not further address Defendants' arguments that 84Partners has failed to plead the "false" and "knowing" elements.

[7] At the hearing, the United States stated that the Navy was still working to remedy the non-conforming parts on the submarines (Doc. 94 at 18:15–20:13), but NNS states in its motion to dismiss that EB, NNS, and the Navy concluded

15

This is 84Partners' second attempt to plead its case. (Docs. 52, 102). Even after almost eight years and some limited discovery it still cannot state a cause of action. (Doc. 106 at 8). The Court dismisses the SAC with prejudice. See Urquilla-Diaz, 780 F.3d at 1057 (affirming dismissal of the plaintiff's second amended FCA complaint with prejudice).[8]

Accordingly, it is hereby

**ORDERED:**

1. Defendant EB's Motion to Dismiss (Doc. 105) and Defendant NNS's Motion to Dismiss (Doc. 106) are **GRANTED**. Plaintiff 84Partners' Second Amended Complaint (Doc. 102) is **DISMISSED with prejudice**.

2. The Clerk is directed to close the file.

---

"that the Nuflo parts currently installed on Navy submarines did not present a safety risk" (Doc. 106 at 10).

[8] At the October 6, 2020 hearing, the Court said that the SAC would be dismissed with prejudice if it did not state a cause of action. (Doc. 94 at 65:25–66:5).

**DONE AND ORDERED** in Jacksonville, Florida the 22nd day of September, 2021.



ckm
Copies:

Counsel of record